Peter **DESIMONE**, John Stepich, Harold Hopkins, Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 14398.

United States Court of Appeals Ninth Circuit.

July 25, 1955.

an offense against the United States in violation of 26 U.S.C.A. § 3253, which reads:

"Any person who shall carry on the business of * * * retail liquor dealer * * * and willfully fails to pay the special tax as required by law, shall * * * be fined * * * and be imprisoned * * *."

There was a trial before The Honorable John Bowen, sitting without a jury by consent of defendants. No one of the three appellants took the stand in his own defense. After trial, upon request, the court entered general and special findings, rejecting those offered by defendants. The trial Judge found all guilty.

Peter Desimone was sentenced to eighteen months in a federal penitentiary. He is dead, as this Court has been advised, so therefore no further attention will be paid to him except as necessary for consideration of the other defendants.

Felton was sentenced to thirty days' confinement and given probation. Bert DePierris was sentenced to sixty days' confinement and placed on probation. Neither of the latter has appealed and will be mentioned only incidentally.

From their convictions, defendants Stepich and Hopkins appeal.

The White Center Athletic Club owned and operated certain premises containing a lobby, main room, office, cloakroom and kitchen. In the main room were a bar, slot machines and dining tables with chairs. Meals were served to individuals and groups for consideration. The members brought their own liquor, which was dispensed by employees for a service charge. But non-members also purchased liquor there by the drink, and liquor was sold for club parties held on the premises. The seals on the liquor bottles in the place were defaced so that the numbers on the federal strip stamp would not be legible. There was evidence of specific acts of storing liquor upon the premises, which the court found

Max R. Nicolai, Seattle, Wash., for appellants.

Charles P. Moriarty, U. S. Atty., Richard D. Harris, John A. Roberts, Jr., Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HEALY, POPE and FEE, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

Appellants Stepich and Hopkins were indicted with three other defendants, Desimone, Felton and DePierris by a grand jury in the Western District of Washington, for conspiring to commit

were joined in by all defendants. "House" liquor was found to have been served at parties of outside organizations for consideration. The employees were found to have served house liquor by the drink, and the court found these were acts of all defendants. There was evidence upon which it was found properly that the establishment was operated as the business of a retail liquor dealer. There was conclusive evidence that the special federal tax required by law for operating such a business was never paid. While the place was operating, it was raided repeatedly by state officers, and the bartenders were convicted of selling liquor by the drink. There was evidence from which it might have been found that the names of appellants were connected with the business in July, 1951, and continuously during the period of the indictment.

Desimone occupied the premises, hired and fired the help, and tended bar at times himself. He was shown on certain official records filed by the club as Vice-President and Manager thereof. Desimone admitted having a house stock of liquor. He admitted he had no federal Retail Liquor Dealers stamp, but claimed he was selling service, not liquor.

Stepich did not testify. He was seen on an occasion sitting at the bar by a state officer, who talked to him. At a later time, Stepich permitted a federal investigator, who had been held up by the minor employees, to enter the place and in the early hours of the morning sold the investigator a roll of dimes to play the slot machines. An official record filed by the club revealed Stepich was President in 1948.

Hopkins verified an answer of White Center Athletic Club in a state suit, as Secretary-Treasurer thereof, upon oath. His name appears on several official records filed by the club as Secretary-Treasurer. He authorized an organization to hold a dinner dance there with the stipulation that drinks could be purchased at the establishment. Hopkins was present when Desimone was questioned by a state officer concerning the possession of a federal stamp. He was tending door on that occasion, and, although a portion of the liquor served to a party was "house stock," he claimed it belonged to the organization staging the party.

The main contention of the two remaining appellants, Stepich and Hopkins, is that "the evidence does not prove beyond a reasonable doubt that defendants agreed to violate 26 U.S.C.A. § 3253, and there is no evidence of a specific design, plan or purpose" to violate that statute.

The questions of fact have been decided by a trial judge of long experience upon the bench. It is not the function of this Court to retry such questions, but only to determine whether there was sufficient evidence to support the conclusion. Upon this proposition, there is no doubt. The overwhelming weight of evidence establishes each of these appellants became participants in an unlawful agreement to operate the business of this retail liquor dealer and willfully failed to pay the special tax. There was no dispute that the business of a retail liquor dealer was carried on by the White Center Athletic Club. There was no shadow of doubt that the special tax was not paid. There was sufficient evidence from which it might be found beyond a reasonable doubt that each of appellants was connected with the operation carried on in the name of the club. The only questions were the mental processes of the persons.

■ Defendants Stepich and Hopkins complain that the indictment was uncertain, ambiguous and charged a nonexistent crime. Therefore, it is said a motion to dismiss should have been sustained and, on trial, a motion for acquittal should have been granted. The charge was the substantive crime of conspiracy. The mere fact that the unlawful agreement as charged was willfully and unlawfully to carry on the business of a retail liquor dealer, and in so doing willfully to fail to pay the tax "required by federal law" does not vitiate the indictment. The conspiracy to commit an illegal act is the crime. A reference to

the statute quoted above shows this point is a hypertechnical criticism of the language used. There is no merit therein. The motion to dismiss was properly denied.

■ The trial court made special findings at the request of defendants and found the existence of the conspiracy and the adherence of all defendants in the language of the indictment, which is sufficient. In addition, the court found that most of the acts charged were committed as charged. The court likewise found a great many acts done by various conspirators which proved their adherence to the unlawful concert of action. The court properly refused to find that the charge was not proved and to find minute details requested by defendants.

There was direct testimony that Stepich was much in evidence and had seeming authority about the establishment of the White Center Athletic Club and that he sold an investigator from a sort of a cashier's window, behind which he was stationed, a roll of dimes to enable the former to play slot machines.

On at least one occasion, Hopkins made arrangements to allow a private party to use the place, and assured them house liquor would be served. From these incidents mentioned above, it is clear there was evidence from which the trial judge could have found there was an exercise of apparent authority by each of these defendants.

■ Apellants objected to the admission of excise tax returns of the White Center Athletic Club, Inc., which were a part of the official records of the Tax Commission of the State of Washington, located at the state capitol, Olympia, Washington, purporting to be signed by John F. Stepich, President, Peter Desimone, Manager, and Harold Hopkins, Secretary of White Center Athletic Club, Inc. The officer on the stand at the time these were offered worked in the same state office where these returns of the club were kept, but he was not technical custodian thereof. Furthermore, he could not identify the signatures of defendants.

It was testified on cross-examination of a government witness:

"The incorporation papers of the White Center Athletic Club show that Mr. Stepich is President and was at the time of the incorporation of the White Center Athletic Club."

and again:

"I examined the records in the State case that showed where Mr. Hopkins had signed under oath that he was the secretary-treasurer of the White Center Athletic Club.

"Q. Now I will ask you whether or not you examined the statement of officers and directors of the White Center Athletic Club on file in the County Auditor's office? A. I did.

"Q. State whether or not Mr. Stepich's name appeared on any of those documents. A. Yes, as president."

All this was before the excise tax form was admitted. Any objection which might have been originally made was thereby waived. In any event, it was only proof of a minor circumstance which the trier of fact might have considered with innumerable others to determine whether there was a conspiracy in existence and whether John F. Stepich was the same John F. Stepich who was present at the tavern and whether he was a member of the conspiracy, if any.

■ There was an objection that the signature of John F. Stepich was not proven. But the personal signature of John F. Stepich appeared on the stipulation waiving trial by jury. This signature was therefore available for comparison with that which appeared upon the returns. 28 U.S.C.A. § 1731. Hopkins' signature was duly authenticated upon the pleading in the state court action, and he likewise had his signature on the stipulation waiving jury trial.

■ Objection was also taken to the admission of employer's quarterly tax

returns filed by the club and purportedly signed by Hopkins and Stepich, respectively, 26 U.S.C.A. § 3809, and special tax returns for coin operated gaming devices purporting to be signed by Desimone. These were on file in offices of the federal government. These were official records of the federal government. Admittedly, they were filed pursuant to law by White Center Athletic Club, Inc., as employer and operator, respectively. These were admissible. 28 U.S.C.A. § 1733.

Judgment affirmed.