**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Andy RAYMOND, Defendant-Appellant.**

**No. 18505.**

United States Court of Appeals,
Seventh Circuit.

Jan. 20, 1971.

Rehearing Denied Feb. 2, 1971.

John Kappos, Gary, Ind., Harold Abrahamson, Hammond, Ind., Peter Friedland, East Chicago, Ind., for defendant-appellant.

William C. Lee, U. S. Atty., Fort Wayne, Ind., Marvin R. Loewy, Sp. Atty., Organized Crime and Racketeering Section, Crim. Div., Mark M. Richard, Special Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before KERNER, PELL and STEVENS, Circuit Judges.

KERNER, Circuit Judge.

Appellant, Andy Raymond, was convicted after a bench trial in the district court for carrying on the business of a retail dealer in liquors and wilfully failing to pay the special tax required by 26 U.S.C. §§ 5121(a) and 5142(a), which is a violation of 26 U.S.C. § 5691(a). Appellant asserts on appeal that he was not a retail dealer in liquors, as defined in 26 U.S.C. § 5122, and that his failure to pay the tax was not wilful. We find both contentions without merit and affirm the conviction.

Appellant was the sole proprietor of premises used as an after-hours gambling establishment from November 1, 1967, to March 15, 1968. A number of federal undercover agents for the Alcohol, Tobacco and Firearms Division of the Treasury Department testified that on several occasions they bought drinks and observed patrons being served and paying for drinks at Raymond's club. The drinks were served to the customers and money collected from them by Miss Pat Erickson. Raymond was present in the club on each occasion when the agents participated in and viewed purchases by the customers from Miss Erickson. On March 15, 1968, a raid was conducted in which three bottles of whiskey and twenty-two cans of beer were seized.

Raymond does not dispute the fact that drinks were dispensed at his club, but claims that Miss Erickson was the dealer required to pay the special tax on the theory that she conducted a private concession and was an independent contractor vis-a-vis Raymond. The trial judge concluded that Raymond was the dealer because he found that Miss Erickson was answerable to Raymond for the manner in which she dispensed the drinks and that Raymond owned some of the liquor that was dispensed. We believe the evidence amply supports these findings.

The testimony at trial showed that on two occasions, Raymond had stated that some of the liquor dispensed to the customers belonged to him. Once, Ray-

mond asked Miss Erickson, in the presence of an agent, what she did with all the liquor he brought to the club. Some time after the raid and seizure of the liquor, Raymond asked an agent, "What is going to happen to my booze and stuff. Am I going to get it back?" Both statements indicate that Raymond had an interest and control over the liquor which was dispensed by Miss Erickson.

The evidence further indicates that Miss Erickson was acting for the benefit and under the supervision of Raymond. On cross-examination, Miss Erickson inadvertently referred to herself as an employee. The judge found the rest of her testimony, in which she explained that she was conducting a private concession, to be incredulous. She stated that she paid Raymond $40 per month for the privilege of running a concession in his club; she further testified that she did not charge the customers for the drinks she served them, and merely accepted tips. Yet, this kind of concession would have been highly unprofitable for her. After the payment to Raymond was made, she would have realized less than $40 per month in profits. The judge concluded that " * * * it is unbelievable that under these circumstances she would volunteer to pay $40 a month for the privilege of rendering this service * * * to the defendant. * * * " We agree. The trial judge who had an opportunity to observe the witnesses and determine their credibility could well have concluded that her explanation justifying the independent contractor theory was a fabrication designed to exculpate Raymond for liability as a retail dealer under the statute. The evidence supports the finding that he was the dealer obligated to pay the tax. Hale v. United States, 149 F.2d 401 (5th Cir. 1945).

■ ■ Raymond also argues that since there was no fixed charge to the customers, and the liquor was provided as a service incidental to the gambling, he did not profit from the liquor trans-

actions and, for that reason, should not be considered a dealer. A desire for profit need not be shown to establish liability as a dealer. Heath v. United States, 169 F.2d 1007 (10th Cir. 1948). Distribution of liquor as a service does not excuse the obligation to pay the tax. Desimone v. United States, 227 F.2d 864 (9th Cir. 1955).

■ We also believe that the appellant's failure to pay the tax was wilful as required by 26 U.S.C. § 5691(a). Appellant argues that the government must prove that he knew of the duty imposed on him by the statute, and that his failure to pay the tax was based on an evil motive. See United States v. Schipani, 362 F.2d 825 (2d Cir. 1966), cert. denied 385 U.S. 934, 87 S.Ct. 293, 17 L.Ed.2d 214 (1966); United States v. Fahey, 411 F.2d 1213 (9th Cir. 1969). Assuming, but not deciding, that these are the elements of wilfulness under § 5691(a), we find that the government has met its burden of proof on this issue.

■ As evidence that Raymond knew that he had an obligation to pay the tax, the government introduced a 1954 application for an Illinois Retailers Liquor License, signed by Raymond. From this, the judge inferred that he was familiar with the federal tax provisions on retail liquor dealers. Prior business experience, such as this license suggests, can be the basis for an inference of knowledge and wilfulness. Orloff v. United States, 153 F.2d 292 (6th Cir. 1946). Further, the judge found from Raymond's books and records, in which Miss Erickson's payments for the concession privilege appear, that Raymond knew of his obligation to pay the tax and consequently constructed the independent contractor scheme. Raymond's accountant testified that entries were made in the books at the end of each month from January to April, 1968. Coupled with the fact that the judge found from Miss Erickson's testimony that the independent contractor theory was a scheme to avoid payment of the

tax, the entries show that Raymond constructed that scheme during the period covered by the indictment. The evil motive which appellant claims is necessary for conviction existed at that time. It was proper for the trial judge to conclude from these facts that the appellant wilfully failed to pay the tax.

For the foregoing reasons, we affirm the conviction of the district court.

Affirmed.